| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ------------------------------------------------------x | |
| In re : | Chapter 7 |
| LAWRENCE M. GOLDFARB :<br>and GAIL HELENE GOLDFARB, : | Case No.: 05-44431 (AJG) |
| Debtors. : | |
| ------------------------------------------------------x | |
| Z-TEX, INC. and ZHEJIANG ZHONGDA :<br>GROUP, CO., | |
| Plaintiffs, : | |
| : | Adv. Pro. No.: 06-01275 (AJG) |
| v. : | |
| LAWRENCE GOLDFARB, : | |
| Defendant. : | |
| ------------------------------------------------------x | |

**OPINION GRANTING SUMMARY JUDGMENT REGARDING OBJECTION
TO DEBTOR'S DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A) REGARDING
FIRST CAUSE OF ACTION AND DENYING SUMMARY JUDGMENT
REGARDING OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTIONS
523(a)(2)(B), 523(a)(4), AND 523(a)(6) REGARDING SECOND, THIRD, AND
FOURTH CAUSES OF ACTION, RESPECTIVELY**

A P P E A R A N C E S

THE LAW FIRM OF HUGH H. MO, P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 2702
New York, New York 10007
      Hugh H. Mo, Esq.

LAWRENCE F. MORRISON, ATTORNEY AT LAW
Attorney for Defendant
220 East 72nd Street
New York, NY 10021
      Lawrence F. Morrison, Esq.


ARTHUR J. GONZALEZ
United States Bankruptcy Judge

This is an adversary proceeding in which Plaintiffs, Z-Tex Inc. USA ("Z-Tex") and Zhejiang Zhongda Group Co. ("Zhejiang Zhongda"), seek a determination that a judgment, dated March 28, 2001 and entered on April 18, 2001 in the Supreme Court of the State of New York, Country of New York (hereinafter the "Supreme Court") in the matter of *Amchtex (USA) Corp. and Yarn Creations, Inc, v. Z-Tex, Inc. and Zhejiang Zhongda Group Co., v. Worldtex (USA) Corp., Pilot Leng a/k/a Chun Pao Leng, and Lawrence Goldfarb*, in favor of Plaintiffs against Defendant, Lawrence Goldfarb, (hereinafter the "Debtor"), and the other counterclaim defendants, for $329,501.04 in damages, joint and several; with $55,818.75 interest from May 31, 1999, joint and several; $820.00 costs and disbursements, joint and several; and $250,000.00 in punitive damages against each counterclaim defendant; as well as financial sanctions of $10,000.00 against each counterclaim defendant for filing a frivolous lawsuit (hereinafter the "Supreme Court Judgment"), is a nondischargeable obligation owed by the Debtor, pursuant to sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6) of title 11 of the United States Code (the "Bankruptcy Code"), by Debtor's chapter 7 bankruptcy petition.

## I. Jurisdiction and Venue

The Court has subject matter jurisdiction over this adversary proceeding under sections 1334(a) and (b) and 157(a) and (b) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding within the meaning of section 157(b)(2)(I) and (J) of title 28 of the United States Code.

Venue is properly before this Court pursuant to section 1409(a) of title 28 of the United States Code.

## II. Procedural History and Background

On or about March 8, 2000, Worldtex (USA) Corp. ("Worldtex") and Yarn Creations, Inc. ("Yarn Creations") instituted an action against Z-Tex and Zhejiang Zhongda in the Supreme Court of the State of New York, County of New York by filing a Summons with Notice, dated March 6, 2000, with Index No. 601009/00. Particularly, in their complaint, Worldtex and Yarn Creations claimed that Z-Tex and Zhejiang Zhongda failed to deliver certain goods to them in accordance with the terms of the parties' contract. Additionally, Worldtex and Yarn Creations asserted that Z-Tex and Zhejiang Zhongda fraudulently induced them to enter into the contract for the sale of goods.

Subsequently, Worldtex and Yarn Creations served a Supplemental Summons and Verified Complaint,[1] dated May 4, 2000, upon Z-Tex and Zhejiang Zhongda.[2]

In response thereto, Z-Tex and Zhejiang Zhongda filed their Verified Answer and Counterclaims (hereinafter collectively referred to as the "Counterclaims"), dated October 26, 2000, against Amchtex (USA) Corp. ("Amchtex"), Yarn Creations, Worldtex, Pilot Leng a/k/a Chung Pao Leng, and Lawrence Goldfarb. The Counterclaims were based upon causes of action in fraud, piercing the corporate veil, goods sold and delivered and account stated against the Debtor, Pilot Leng a/k/a Chun Pao Leng, and Amchtex, Yarn Creations, and Worldtex (hereinafter collectively referred

---

[1] The Court notes that it never received a copy of the Original Complaint and therefore it is not aware of differences, if any exist, between the Original Complaint and Verified Complaint

[2] Prior to the conclusion of the trial of the Supreme Court Action, Plaintiffs therein Amchtex (USA) Corp. and Yarn Creations, Inc. withdrew their initial complaint against Z-Tex and Zhejiang Zhongda.

3

to as the "Shell Corporations"), which were garment import-export businesses owned and controlled by the Debtor and Pilot Leng. In particular, Z-Tex and Zhejiang Zhongda pled in the Counterclaims that the Debtor and his partner Pilot Leng used the Shell Corporations to intentionally deceive and defraud Z-Tex and Zhejiang Zhongda by misrepresenting to Z-Tex and Zhejiang Zhongda their intention to pay for eight (8) shipments of goods from China undertaken and delivered by Z-Tex and Zhejiang Zhongda to the Debtors and Pilot Leng's Shell Corporations at their specific request.

Moreover, Z-Tex and Zhejiang Zhongda pled in the Counterclaims that in furtherance of the Debtor's and Pilot Leng's common scheme to defraud Z-Tex and Zhejiang Zhongda, Pilot Leng willfully and maliciously (a) misrepresented their intention to fulfill their obligations to pay for the goods that they requested to be imported and delivered by Z-Tex and Zhejiang Zhongda to the Shell Corporations, (b) supplied checks from the Shell Corporations to Z-Tex and Zhejiang Zhongda, which were not sufficiently funded, (c) undercapitalized the Shell Corporations, and (d) drained the assets of their Shell Corporations; all for the purpose of fraudulently inducing Z-Tex's and Zhejiang Zhongda's reliance thereupon to deliver goods to the Shell Corporations with the intent of avoiding the obligation bound to arise as a result of their operations.

Beginning on February 23, 2001 and continuing on successive days until March 5, 2001, Justice Goodman conducted a trial without a jury in the New York Supreme Court, County of New York (hereinafter the "Supreme Court Action"). Upon conclusion the Supreme Court Action, Justice Goodman issued a decision on the record on March 5, 2001 awarding judgment to Z-Tex and Zhejiang Zhongda on their Counterclaims against the Debtor and the other counterclaim defendants, including piercing of the corporate veil

to impose individual liability upon the Debtor and Pilot Leng and an assessment of punitive damages against the Debtor and Pilot Leng.

Specifically, in the Supreme Court Judgment Justice Goodman explained that punitive damages were "wholly appropriate in this case. I find that this case has been a mockery. Punitive damages are intended to both be punitive, and also serve to act as a deterrent for similar conduct, where the conduct is so egregious, as it is here, to not only the individuals involved but the public. Accordingly, punitive damages are imposed on each corporate party. This is not in the alternative, this is on each, in the amount of $250,000." *Amchtex (USA) Corp. and Yarn Creations, Inc. v. Z-Tex,, Inc. and Zhejiang Zhongda Group Co.*, No. 00-601009, slip op. (N.Y.Sup.Ct. New York County March 5, 2001)

Moreover, Justice Goodman stated that, "piercing the corporate veil…is a most applicable doctrine in this particular case…[because] these corporations were, in essence shell corporations; that they have been milked or bled for the benefit of certain individuals, who have been unaccountable to the Court, to the other parties in the lawsuit, and, apparently, to any government agencies, whether that be under the Business Corporation Law, the Secretary of State, or any state and federal taxing authorities," and hence, "the corporate veil is pierced."

Thereafter, on April 18, 2001, the Supreme Court Judgment was entered, dated March 28, 2001, against the Debtor and the other counterclaim defendants for $329,501.04 in damages, joint and several; with $55,818.75 interest from May 31, 1999, joint and several; $820.00 costs and disbursements, joint and several; and $250,000.00 in

punitive damages against each counterclaim defendant; as well as financial sanctions of $10,000.00 against each counterclaim defendant for filing a frivolous lawsuits.[3]

Subsequently, on or about October 7, 2005, the Debtor, together with his wife Gail Helene, filed a voluntary chapter 7 bankruptcy petition.

As a result, Z-Tex and Zhejiang Zhongda (hereinafter the "Judgment Creditors") filed the instant adversarial proceeding against the Debtor to deny the discharge of the Supreme Court Judgment.

### III.  Discussion

The Judgment Creditors request the Court grant them summary judgment that the Supreme Court Judgment is non-dischargeable pursuant to sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.  In the Supreme Court Judgment, Justice Goodman ordered the Debtor to pay punitive damages, *inter alia,* for the breach of contract claim that the Judgment Creditors brought against the Debtor.  The Judgment Creditors assert that the Supreme Court Judgment is non-dischargeable due to Justice Goodman's assessing of punitive damages on the Debtor for the breach of contract claim.  The Judgment Creditors argue that an assessment of punitive damages for a breach of contract claim under New York State Law requires a judicial finding that the Debtor acted fraudulently.

In opposition, the Debtor argues that since the Supreme Court Judgment never explicitly mentioned a finding of fraud or false representation for their breach of contract with the Judgment Creditors, that the Supreme Court Judgment is dischargeable.

---

[3] Justice Goodman further indicated in her Decision on the Record that she would refer the Supreme Court Action to the attention of the Office of the New York State Attorney General, the Internal Revenue Service as well as the U.S. Attorney's Office for their review of Lawrence Goldfarb and Pilot Leng's conduct therein for other possible legal actions against them.

6

Alternatively, the Debtor argues that since an appeal of the Supreme Court Judgment is currently pending, the Court should await the outcome of that appeal before determining the dischargeability issues.

**A.    Summary Judgment Standard**

The basic principles governing a motion for summary judgment are well settled. Rule 56 of the Federal Rules of Civil Procedure (hereinafter each rule entitled the "Rule"), made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs summary judgment motions. Summary judgment may only be granted when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(C). Rule 56(c) provides in pertinent part

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* at 248. The burden is upon the moving party to clearly establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The court, however, must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. *See United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994). The movant can meet its burden for

7

summary judgment by showing that little or no evidence may be found to support the non-movant's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

**B.      Punitive Damages and Actual Fraud**

The Supreme Court Judgment imposed punitive damages on the Debtor. Although in her decision on the record, Judge Goodman did not explicitly state that the Debtor acted fraudulently in his actions that gave rise to the breach of contract claim concerning the Judgment Creditors, under New York state common law a finding of actual fraud is necessary for an assessment of punitive damages against a defendant in a breach of contract case. "Punitive damages are not recoverable for an ordinary breach of contrast as their purpose is not to remedy private wrongs but to vindicate public rights. However, where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable…." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y. 2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (N.Y. May 10, 1994).

The court in *Rocanova* elaborated that an assessment of punitive damages based on fraudulent breach of contract requires action that can be characterized as "such wanton dishonesty as to imply a criminal indifference to civil obligations" or action that creates an "inference of fraudulent *intent* (emphasis added)" against the party on whom punitive damages were assessed. *Id.* The modifiers describing the fraud required for an assessment of punitive damages make clear that a court in New York must find actual fraud to assess punitive damages on a defendant liable for breach of act. Thus, the

8

Supreme Court must have decided that the Debtor's acted with actual fraud in his breach of contract with the Creditor.

Therefore, in recognizing the standard set out by the court in *Rocanova,* the Court finds that the Supreme Court's assessment of punitive damages determined that the Debtor acted with actual fraud in his breach of contract with the Judgment Creditors.

**C.    Collateral Estoppel Standard**

"The doctrine of collateral estoppel applies when a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment. That determination is conclusive between the same parties, or their privies, in a subsequent suit on a different cause of action." *Restatement (Second) of Judgments §17(3) (1980).* "The Second Circuit utilizes a two-tiered test in determining whether collateral estoppel is applicable: (1) the issues in the two proceedings must be identical, and (2) the party sought to be estopped must have had a full and fair opportunity to contest the prior determination." *In re Kelly*, 155 B.R. 75, 78 (Bankr. S.D.N.Y.1993 (*citing C.H. Sanders Co. v. BHAP Housing Dev. Fund. Co., Inc.,* 903 F.2d 114, 121 (2d Cir.1990). *reh'g denied,* 910 F.2d 33 (2d Cir.1990)).

Federal courts must apply state collateral estoppel procedures when deciding if an issue potentially determined in a state court action is precluded from being litigated in a subsequent federal court action. The United States Supreme Court explained that, "[28 United States Code] Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the court's of the State from which the judgment emerged." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 (1982).

9

In New York, the substantive standard for determining whether an issue decided in previous litigation is precluded from trial in subsequent litigation, is substantially similar to the federal standard for collateral estoppel: "Collateral estoppel…'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against the party…whether or not the tribunals or causes of action are the same'… A party invoking…the doctrine [of]…collateral estoppel must show that the critical issue in the instant action was necessarily decided in the prior action and that the party against whom estoppel is sought has been afforded a full and fair opportunity to contest that issue…." *Bridgeview Garden Apartments LLC v. New York State Division of Housing and Community Renewal*, 798 N.Y.S. 2d 343 (2004); citing *New York Site Development Corp. v. DEC,* 217 App. Div.2d 699, 700, 630 N.Y.S.2d 335, 336 (2d Dep't 1995).

As discussed before, the Supreme Court Judgment decided the essential factual issue of whether the Debtor acted fraudulently in obtaining the property, services and credit of the Judgment Creditors. Upon a trial of the merits, the Supreme Court determined this essential factual issue by its determination that punitive damages were warranted. Accordingly, pursuant to the doctrine of collateral estoppel, the finding of fraud in the Supreme Court Judgment precludes the Court from considering that issue in the current matter.

Moreover, it is undisputed that the Debtor testified and was represented by counsel at the trial of the Supreme Court Action. Furthermore, it is also undisputed that the Supreme Court Judgment is still in full force and effect and has yet to be satisfied.

Therefore, following the collateral estoppel standard set out in *Bridgeview Garden Apartments*, the Debtor is precluded from relitigating the fraud issue in this action as it was (1) clearly raised in the Supreme Court Action, and (2) that, after a trial, Justice Goodman necessarily decided that the Debtor did in fact and as a matter of law act fraudulently in his transaction with the Judgment Creditors.  Therefore, pursuant to the standard for collateral estoppel, the Court will apply the doctrine of collateral estoppel with respect to the essential factual issue, to wit: that the Debtor obtained the property, services and credit of the Judgment Creditors upon and through fraudulent inducement.

**D.     Effect of Appeal of the Supreme Court Judgment on the Current Bankruptcy Proceeding**

The Court rejects the Debtor's argument that the Judgment Creditors' motion should be denied for the reason that the Supreme Court Judgment is not complete because the Debtor has appealed the prior decision.  However, collateral estoppel may be applied when the prior judgment is on appeal.  For purposes of issue preclusion, a "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  *Restatement (Second) of Judgments, § 13 (1980).*

Moreover, the Court notes that the Debtor's appeal itself is tenuous.  Specifically, the Debtor's ground for appeal is based on a procedural error by the Creditors and the Creditors' attorneys representing them in the Supreme Court Judgment.  Namely, the Debtor states in the "DEFENDANTS STATEMENT OF MATERIAL FACTS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED IN CONNECTION WITH DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO ITS PRIMA FACIE CASE" that the Debtor's ground

11

for appeal is based on their recent "discover[y] that Plaintiff had failed to file a Notice of Entry of the [Supreme Court] Judgment." The Plaintiff does not provide any further discussion of the issue. However, regardless of the merits of Plaintiff's procedural argument, neither the Plaintiff, nor any other party, has sought a stay of the Supreme Court Judgment and, hence, none is in effect. Accordingly, the Court is bound to give full faith and credit to the Supreme Court Judgment.

**E.  Exceptions to Discharge Under Section 523(a) of the Bankruptcy Code**

"Stated generally, a discharge under subsection (a) of [S]ection 727 of the Bankruptcy Code relieves the debtor of all pre-petition debts and liabilities. 11 U.S.C. §727(b). Exceptions to such discharge are provided in Section 523(a) of the Bankruptcy Code. Debts and liabilities based solely upon breach of contract are not excepted from discharge under Section 523(a)." *In re Dobrayel*, 287 B.R. 3, 11-12 (Bankr. S.D.N.Y. 2002).

In considering a judgment of another court to determine the dischargeability of a debt, the form of the judgment itself does not control, and resort may be had to the entire record to determine dischargeability. *Rivera v. Moore-McCoormack Lines, Inc.*, 238 F. Supp. 233 (S.D.N.Y. 1965).

**F.  First Cause of Action**

The Judgment Creditors argue that the debt owed to them in the sum of $329,501.04 should be exempted from the Debtor's discharge pursuant section 523(a)(2)(A) of the Bankruptcy Code, and that a judgment should be entered for said nondischargeable sum.

Section 523(a)(2)(A) of the Bankruptcy Code provides that

12

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The Judgment Creditors assert that the Supreme Court Judgment against the Debtor, his co-alter ego, Pilot Leng, and the Shell Corporations was predicated upon the Supreme Court finding actual fraud in the transaction between the Debtor and the Judgment Creditor.

Furthermore, the Judgment Creditors argue that Justice Goodman held that the Debtor and his co-alter ego Pilot Leng were the actual principals of the Shell Corporations, and that the Shell Corporations were milked or bled for the benefit of the Debtor and his co-alter ego Pilot Leng. As a result, Justice Goodman pierced the corporate veil against the Debtor and his co-alter ego Pilot Leng, adjudging them individually liable for their willful conduct against Z-Tex and Zhejiang Zhongda that was carried out in the name of the Shell Corporations.

Accordingly, Justice Goodman found the Debtor, his co-alter ego Pilot Leng, and the Shell Corporations jointly and severally liable for the actual damages of $329,501.04; the pre-judgment interest of $55,818.75; and, the costs and disbursements of $820.00. Moreover, in light of their egregious conduct, Justice Goodman further awarded to Z-Tex and Zhejiang Zhongda: $250,000.00 in punitive damages individually against the Debtor Lawrence Goldfarb, his co-alter ego Pilot Leng, and their Shell Corporations, each; as well as financial sanctions of $10,000.00 individually against the Debtor Lawrence Goldfarb, his co-alter ego Pilot Leng, and their Shell Corporations, each for filing a frivolous lawsuit.

13

To reiterate, the elements of section 523(a)(2)(A) of the Bankruptcy Code relevant to this litigation are (a) a debt for money, and (b) the debt be obtained by actual fraud. The Court is satisfied that the relevant elements of section 523(a)(2)(A) of the Bankruptcy Code have been satisfied for the purposes of this litigation. It is not disputed that the Debtor does indeed owe the Judgment Creditors a debt for money, namely the $329,501.04 awarded in damages. Furthermore, the issue of actual fraud in the transaction was decided in the Supreme Court Judgment and that finding of actual fraud applies here under the doctrine of collateral estoppel. Therefore, the Debtor's debt to the Judgment Creditors is non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

**G.    Second Cause of Action**

The Judgment Creditors argue that the debt owed to them in the sum of $329,501.04 should be exempted from the Debtor's discharge pursuant to section 523(a)(2)(B) of the Bankruptcy Code, and that a judgment should be entered for said nondischargeable sum.

Section 523(a)(2)(B) of the Bankruptcy Code provides that

> A discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing that is materially false; respecting the debtor's or an insider's financial condition; on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and that the debtor caused to be made or published with intent to deceive.

The Judgment Creditors argue that the Supreme Court Judgment includes a finding that among the misrepresentations perpetrated by the Debtor and Pilot Leng's fraud, are included several written statements that were submitted to Z-

14

Tex and Zhejiang Zhongda that were materially false. Furthermore, the Judgment Creditors assert that these materially false written statements were made with respect to the financial conditions of the Shell Corporations of which the Debtor and his co-alter ego Pilot Leng were the actual principals, on which Z-Tex and Zhejiang Zhongda reasonably relied, and the Debtor and Pilot Leng made with intent to deceive Z-Tex and Zhejiang Zhongda.

However, the assertions put forth by the Judgment Creditors were never explicitly stated in the Supreme Court Judgment nor can it be conclusively deduced that Justice Goodman necessarily must have found that those assertions were materially false and, if so, attributable to Plaintiff in order for her to reach the resulting judgment in the Supreme Court Judgment. As discussed before, the only pertinent finding that can be deduced with certainty is that Justice Goodman found that the Debtor acted fraudulently in incurring the debt that he owed to the Judgment Creditor.

At this point in the litigation the elements of section 523(a)(2)(B) of the Bankruptcy Code cannot be established without an evidentiary hearing. Therefore, summary judgment regarding discharge pursuant to section 523(a)(2)(B) of the Bankruptcy Code is not warranted.

**H.    Third Cause of Action**

The Judgment Creditors argue that the debt owed to them in the sum of $329,501.04 should be exempted from the Debtor's discharge pursuant to section 523(a)(4) of the Bankruptcy Code, and that a judgment should be entered for said nondischargeable sum.

Section 523(a)(4) of the Bankruptcy Code provides that

A discharge under section 727, 1441, 1227(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

The Judgment Creditors argue that the Supreme Court adjudicated the Debtor, his co-alter ego Pilot Leng and the Shell Corporations liable to the Judgment Creditors for their willful taking of the property of the Judgment Creditors with fraudulent intent. Furthermore, the Judgment Creditors extend their argument to claim that the Debtor committed larceny pursuant to section 523(a)(4) of the Bankruptcy Code.

For the purposes of determining larceny in a bankruptcy proceeding, the Bankruptcy Court must ask "whether the Debtor committed 'larceny' within the meaning of section 523(a)(4) of the Bankruptcy Code." *Kaye v. Rose*, 934 F.2d 901, 903 (7th Cir. 1991). "Larceny is proven for §523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Nahabedian,* 87 B.R. 214, 215 (S.D.Fla. 1988).

Furthermore, the Judgment Creditors argue the "fiduciary capacity" requirement does not need to be satisfied in order to prevail on a nondischargeability claim under the larceny exception in section 523(a)(4) of the Bankruptcy Code. *In re Graham*, 194 B.R. 369, 374 (Bankr. E.D.Pa. 1996).

Though the Judgment Creditors make a strong argument for a finding of larceny against the Debtor pursuant to section 523(a)(4) of the Bankruptcy Code, the case law that they rely on is distinguishable from the current proceeding. Most notably, when attempting to determine whether a Debtor's actions satisfy the larceny provision in section 523(a)(4) of the Bankruptcy Code, for summary judgment purposes, the burden is

16

on the Judgment Creditors to "prove each element by clear and convincing evidence." *Kaye v. Rose*, 934 F.2d 901, 903 (7th Cir. 1991).

As discussed before, for the purpose of summary judgment, without further evidentiary hearings, the Court may only rely on the Supreme Court to establish that there was actual fraud in the transaction between the Debtor and the Judgment Creditors. It is impossible to extrapolate Justice Goodman's opinion whether the Debtor's conduct may be considered "embezzlement" or "larceny."

At this point in the proceeding, the Judgment Creditors cannot satisfy their burden of proving that the Debtor has taken property from the Judgment Creditors both wrongfully and with fraudulent intent. Thus, the elements of section 523(a)(4) of the Bankruptcy Code cannot be established without an evidentiary hearing. Therefore, summary judgment regarding discharge pursuant to section 523(a)(4) of the Bankruptcy Code is not warranted.

**I.     Fourth Cause of Action**

The Judgment Creditors argue that the debt owed to them in the sum of $329,501.04 should be exempted from the Debtor's discharge pursuant to section 523(a)(6) of the Bankruptcy Code, and that a judgment should be entered for said nondischargeable sum.

Section 523(a)(6) of the Bankruptcy Code provides that

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

17

"A malicious injury is a wrongful injury, caused without just cause or excuse but does not require personal hatred, spite, or ill-will." *In re Hambley*, 329 B.R. 382, 402 (Bankr. S.D.N.Y. 2001) (*citing In re Scheller*, 265 B.R. 39, 54-55).

The Judgment Creditors argue that Justice Goodman's decision on the record demonstrates that the Debtor and Pilot Leng's conduct against the Judgment Creditors caused a malicious injury.

The Judgment Creditors' rationale for this argument stems from Justice Goodman's award of punitive damages in the amount of $250,000.00 against the Debtor (in addition to $10,000.00 sanctions against each of them for their frivolous lawsuit), and her intention, stated on the record, to refer the Debtor's conduct to the authorities for further legal action.

Though interpretations of New York state common law may well equate the definitions of the terms "willful" and "malicious injury" with "egregious," the Judgment Creditors have not provided the Court with a sufficient foundation to make that connection. Thus, as discussed before, the Court must rely solely on the text of the Supreme Court Judgment, and reasonable inferences that can be made from it, which only explicitly lays out the basis for a finding of actual fraud in the transaction between the Debtor and the Judgment Creditors.

Further evidentiary hearings would be necessary to establish whether or not the Judgment Creditors sustained a "malicious injury." Therefore, summary judgment regarding the Debtor's dischargeable pursuant to section 523(a)(6) of the Bankruptcy Code is not warranted.

18

### IV. Conclusion

Based on the foregoing, Z-Tex Inc. and Zhejiang Zhongda Group, Co.'s Motion for Summary Judgment is granted, in part, and denied, in part.  The Motion for Summary Judgment is denied with respect to the Second, Third, and Fourth Causes of Action.  However, the Motion for Summary Judgment is granted pursuant to the First Cause of Action, with respect to exempting from discharge the debt owed to the Judgment Creditors in the sum of  $329,501.04 plus interest, pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

Counsel for the Plaintiffs is to settle an order consistent with this opinion.

Dated: New York, NY
       December 5, 2006

                                    <u>s/Arthur J. Gonzalez</u>
                                     UNITED STATES BANKRUPTCY JUDGE